Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL SAMS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>TEEKAY LNG PARTNERS L.P.,<br>TEEKAY GP L.L.C., KENNETH HVID,<br>C. SEAN DAY, ALAN SEMPLE, DAVID<br>SCHELLENBERG, RICHARD D.<br>PATERSON, and SYLVIA BARNES,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities<br>      Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities<br>      Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michael Sams ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this unitholder action against Teekay LNG Partners L.P. ("Teekay LNG" or the "Partnership"), the Partnership's general partner Teekay GP L.L.C ("Teekay GP") and the Board of Directors of Teekay GP (the "Board" or the "Individual Defendants," and collectively with the Partnership and Teekay GP, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Partnership to Stonepeak Infrastructure Fund IV Cayman (AIV III)

LP ("Parent" or "Stonepeak") as a result of an unfair process, and to enjoin an upcoming unitholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an October 12, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 6-K attaching the definitive Agreement and Plan of Merger (the "Partnership Agreement"). Under the terms of the Partnership Agreement, Stonepeak will acquire all the outstanding units of Teekay LNG common units for $17.00 per unit in cash. As a result, Teekay LNG will become an indirect wholly-owned subsidiary of Stonepeak.

3.     Thereafter, on November 2, 2021, Teekay LNG filed a Proxy Statement on Form 6-J attaching the proxy statement (the "Proxy Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Proxy Statement reveals that the sales process was largely controlled and dominated by the controlling unitholder of the partnership, Teekay Corporation.  In fact, the Proxy Statement reveals that the sales process itself was initiated by Teekay Corporation itself seeking to sell its majority stake in the Partnership.

5.     Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Partnership significant and immediate benefits with no thought to Plaintiff, as well as the Partnership's public unitholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Partnership Board Members and executive officers will be able to exchange all Partnership equity awards for the merger consideration.

6.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Proxy Statement on November 2, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Proxy Statement is materially deficient, deprives Plaintiff

of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Teekay LNG, provided by Teekay LNG to the Conflicts Committee of the Board's financial advisor Houlihan Lokey Capital, Inc. ("Houlihan Lokey") and the full Board's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Houlihan Lokey and Morgan Stanley, if any, and provide to the Partnership and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Tennessee and, at all times relevant hereto, has been a Teekay LNG unitholder.

9.      Defendant Teekay LNG provides marine transportation services focusing on liquefied natural gas (LNG) and liquefied petroleum gas (LPG) worldwide. Teekay LNG is incorporated in the Republic of The Marshall Islands and has its principal place of business at 4th Floor, Belvedere Building, 69 Pitts Bay Road, Hamilton, HM 08, Bermuda. Shares of Teekay LNG common units are traded on the NYSE under the symbol "TPG".

10.      Defendant Kenneth Hvid ("Hvid") has been a Director of the Partnership at all relevant times. In addition, Hvid serves as the Chairman of the Teekay GP Board.

11.      Defendant C. Sean Day ("Day") has been a director of Teekay GP at all relevant times.

12.    Defendant Alan Semple ("Semple") has been a director of Teekay GP at all relevant times.

13.    Defendant David Schellenberg ("Schellenberg") has been a director of Teekay GP at all relevant times.

14.    Defendant Richard D. Paterson ("Paterson") has been a director of Teekay GP at all relevant times.

15.    Defendant Sylvia Barnes ("Barnes") has been a director of Teekay GP at all relevant times.

16.    Defendants identified in ¶¶ 10 - 16 are collectively referred to as the "Individual Defendants."

17.    Defendant Teekay GP is the Partnership's sole General Partner.  Teekay GP is a limited liability company organized under the laws of the Republic of the Marshall Islands and is a wholly-owned indirect subsidiary of Teekay Corporation.  The Board of Teekay GP serves as the Board for the Partnership.

18.    Non-Party Teekay Corporation is a portfolio manager of marine services to the global oil and natural gas industries, to expand its operations in the LNG shipping sector.  Teekay Corporation is incorporated under the laws of Bermuda and with principal offices at 4th Floor, Belvedere Building, 69 Pitts Bay Road, Hamilton, HM 08, Bermuda.    Teekay Corporation controls and is the parent of Teekay GP and owns approximately 41% of the outstanding common units of the Partnership.

19.    Non-Party Stonepeak is a leading alternative investment firm specializing in infrastructure and real assets with approximately $39 billion of assets under management.  Stonepeak is a Cayman Islands exempted limited partnership and has its headquarters in New York, NY.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Partnership officers or directors, have extensive contacts within this District; for example, the Partnership's units trade on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Partnership Background

23.     Teekay LNG is one of the world's largest independent owners and operators of LNG carriers, providing LNG and LPG services primarily under long-term, fee-based charter contracts through its interests in 47 LNG carriers, 21 mid-size LPG carriers, and seven multi-gas carriers. Teekay LNG's ownership interests in these vessels range from 20 to 100 percent. In addition, Teekay LNG owns a 30 percent interest in an LNG regasification terminal. Teekay LNG is a publicly traded master limited partnership formed by Teekay Corporation (NYSE: TK) as part of its strategy to expand its operations in the LNG and LPG shipping sectors. Teekay LNG was incorporated in 2004 and is based in Hamilton, Bermuda.

24.     The Partnership's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the August 5, 2021 press release announcing its 2022 Q2 financial results, the Partnership highlighted Adjusted net

income attributable to the partners and preferred unitholders of $57.0 million, and Total adjusted EBITDA of $183.5 million in the second quarter of 2021.

25.     Speaking on the positive results, CEO of Teekay Gas Group Ltd. said, "'Teekay LNG reported another quarter of strong results today, with second quarter of 2021 adjusted net income of $0.57 per common unit and over $183.5 million of total adjusted EBITDA. As expected, our results in the second quarter reflect a heavier than normal drydock schedule. Looking ahead, our third quarter 2021 results are also expected to be impacted by a heavy drydock schedule; however, for the fourth quarter of 2021, we are expecting a bounce back as a result of a substantially reduced number of drydock days across the fleet. The spot and term charter market for LNG carriers has been counter-seasonally strong over the past six months, and LNG supply and demand fundamentals are pointing to continued strength through the rest of 2021 and into 2022. This should benefit the *Creole Spirit*, which is on a market-linked contract until mid-February 2022. We believe this market strength could also be a tailwind for Teekay LNG next year as we have a few LNG carriers expected to roll-off of their current contracts during the first half of next year.  We do, however, continue to have nearly all of our 2021 and the vast majority of our 2022 revenue days already secured on fixed-rate charters and generating consistent cash flow.'"

26.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Teekay LNG.  Clearly, based upon the positive outlook, the Partnership is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused Teekay LNG to enter into the Proposed Transaction without providing requisite information to Teekay LNG unitholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Partnership by any means possible no matter the price.

29.     Notably, the Proxy Statement reveals that the entire sales process was initiated by Teekay Corporation's desire to sell its stake in the Partnership.  In fact, Teekay Corporation ran a parallel "Stake Sale" sales process attempting to sell its share of the Partnership which involved the engagement of a financial advisor and a market outreach to nineteen potentially interested counterparties.  It was only after the initiation of the Stake Sale did Teekay Corporation reach out to the Teekay GP Board to discuss the amenability of the latter to a sale of the entire Partnership.  Notably, the Proxy statement does not provide any information whatsoever that the Teekay GP Board, at any point prior to the actions taken by Teekay Corporation, had considered a sale of the Partnership, nor does it provide adequate information regarding the influence Teekay Corporation, its Officers, or its board, had on Teekay GP Board's decision to seek a sale of the entire Partnership, which could have only benefited the position of Teekay Corporation.

30.     Of significant note, Teekay Corporation's engaged financial advisor was none other than Morgan Stanley, whom would later terminate its engagement with Teekay Corporation to become the Board's financial advisor, further evidencing the improper influence of Teekay Corporation over the entire sales process.

31.     In addition, the Proxy Statement is silent as to the nature of the confidentiality agreements entered into between the Partnership and potentially interested third parties, including Stonepeak, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.  The Proxy Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Partnership and any potentially

interested third parties, including Stonepeak, throughout the sales process, if any, would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

33.     On October 4, 2021, Teekay LNG and Stonepeak issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **Hamilton, Bermuda and New York, USA, October 4, 2021** – Teekay LNG Partners L.P. (Teekay LNG) (NYSE:TGP) and Stonepeak, a leading alternative investment firm specializing in infrastructure and real assets, today announced that they have entered into an agreement and plan of merger (the Merger Agreement). Under the Merger Agreement, investment vehicles managed by Stonepeak will acquire (a) all the issued and outstanding common units representing limited partner units in Teekay LNG, including approximately 36.0 million common units owned by Teekay Corporation (Teekay) (NYSE:TK), and (b) 100 percent of Teekay's ownership in Teekay LNG's general partner, Teekay GP L.L.C. (Teekay GP), which includes an economic ownership interest equivalent to approximately 1.6 million Teekay LNG common units, for $17.00 per common unit or common unit equivalent in cash (collectively, the Transaction), representing an enterprise value of $6.2 billion, including consolidated and proportionate joint venture net debt, and $1.5 billion in common unit equity value. The $17.00 per unit acquisition price represents a premium of 8.3 percent to the closing price of Teekay LNG's common units on October 1, 2021 and premiums of 12.3 percent and 17.5 percent to the volume-weighted average price of Teekay LNG's common units over the last 60 and 180 days, respectively.
>
> The Transaction is the result of a review by Teekay GP's Board of Directors of strategic alternatives available to Teekay LNG. The Conflicts Committee of Teekay GP, comprised of independent directors and advised by its own independent legal and financial advisors, determined that the Transaction was advisable and in the best interests of Teekay LNG and its unitholders unaffiliated with Teekay and unanimously approved the Transaction. In considering its recommendation, the Conflicts Committee of Teekay GP was advised by Houlihan Lokey Capital, Inc. Subsequently, acting upon the recommendation of the Conflicts Committee, the Board of Directors of Teekay GP unanimously approved the Transaction and recommended that all Teekay LNG's common unitholders vote in favor of the Merger Agreement on the terms presented.
>
> "This is a transformative transaction for Teekay LNG that will enable existing unitholders to realize an attractive valuation and immediate liquidity on closing," commented Mark Kremin, President and CEO of Teekay Gas Group Ltd. "Under

Stonepeak's ownership, we expect Teekay LNG to have improved access to competitively priced capital for both fleet renewal and potential future growth in the next phase of our development, which has not been available through the public equity capital markets for many years. We are excited to partner with Stonepeak and look forward to continuing to build our leading market positions, while maintaining our strong focus on operational excellence. We believe that the combination of our existing management and operations teams with Stonepeak, which has a long track record for investing in energy infrastructure, will provide substantial benefits to our customers, employees, joint venture partners and capital providers in the future."

"Stonepeak has long recognized the growing global demand for LNG and importance of natural gas as a bridge fuel, particularly as the world continues to shift toward cleaner sources of energy," said James Wyper, Senior Managing Director at Stonepeak. "Through this transaction, we have an exciting opportunity to invest in a critical energy transition infrastructure business in the form of Teekay LNG's high-quality, modern fleet of vessels and stable long-term customer contracts. We are particularly excited to partner with Teekay LNG's best-in-class management team to bring cheaper, cleaner, more reliable energy supply to all parts of the world, especially in Asia where we have been active investors in the ongoing shift to cleaner fuels and renewables."

"Since the initial public offering in 2005, Teekay has built Teekay LNG into the world's third largest independent LNG carrier owner and operator, with one of the biggest and most diversified portfolios of long-term contracts with leading players in the LNG industry," commented Kenneth Hvid, Teekay's President and CEO. "We believe this Transaction represents a unique opportunity to monetize our position in Teekay LNG while realizing an attractive return on investment for Teekay and for Teekay LNG common unitholders. This Transaction also provides Teekay with greater financial flexibility to leverage its existing operating franchise and industry-leading capabilities to pursue attractive investment opportunities in both the shipping sector and potentially in new and adjacent markets, which we expect to be dynamic as the world pushes for greater energy diversification."

The Transaction has been approved by the Board of Directors of Teekay GP and Teekay, including the unanimous approval of the Conflicts Committee of Teekay GP, and is targeted to close by the end of 2021. The Transaction remains subject to approval by a majority of Teekay LNG's common unitholders at a special meeting to be held in connection with the Transaction, and the satisfaction or waiver of certain customary closing conditions. Teekay, which currently owns approximately 41 percent of Teekay LNG's outstanding common units, has entered into a Voting and Support Agreement to vote in favor of the merger.

As part of the Transaction, Teekay will transfer to Teekay LNG the ownership of the management services companies that currently deliver the operations for

Teekay LNG and certain of its joint ventures under existing management services contracts.

Promptly after the completion of the Transaction, the common units of Teekay LNG will be delisted from the New York Stock Exchange. The Series A and B preferred units of Teekay LNG are expected to remain outstanding and continue to trade on the New York Stock Exchange following the completion of the Transaction.

### *Potential Conflicts of Interest*

34.     The breakdown of the benefits of the deal indicate that Teekay Corporation and Stonepeak are the primary beneficiaries of the Proposed Transaction, not the Partnership's public unitholders such as Plaintiff.  The Board and the Partnership's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public unitholder of Teekay LNG.

35.     First and foremost as indicated above the sales process was tainted by the undue influence of Teekay Corporation, who despite owning a non-controlling interest of the Partnership, utilized its control over Teekay GP to force a sale of the entire Partnership as a more appealing alternative to potentially interested third parties than its own Stake Sale.

36.     In addition, while the Proxy Statement provides the following information regarding the ownership amounts of outstanding Partnership units, it fails to provide an accounting of the consideration that insiders are set to receive as a result of said unit amounts being exchanged for the merger consideration upon the consummation of the Proposed Transaction.

| Identity of Person or Group | Number of Common Units Beneficially Owned | Percentage of Class Beneficially Owned[1] |
|---|---|---|
| *Beneficial Owners of 5% or More of our Common Units:* | | |
| Teekay Corporation[1], [2] | 35,958,374 | 41.3% |
| FMR LLC[3] | 6,900,830 | 7.93% |
| Cobas Asset Management[4] | 3,446,107 | 3.96% |
| *All directors and executive officers as a group (12 persons)[5]* | —* | —* |

37.     Moreover, upon the consummation of the Proposed Transaction, the Proxy Statement indicates that each outstanding Partnership option, restricted unit, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement, but fails to provide a per individual and/or entity accounting of the consideration which will be granted, only providing the following:

|  | Number of Unvested Restricted Units (#) | Aggregate Value of Unvested Restricted Units ($)[1] |
|---|---|---|
| All officers of Teekay GP L.L.C., Teekay Gas Group Ltd. and Teekay Corporation, as a group (10 persons) | 243,599.97 | $4,141,199.49 |

38.     The Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Partnership's unitholders.

39.     Thus, while the Proposed Transaction is not in the best interests of Teekay LNG, Plaintiff or Partnership unitholders, it will produce lucrative benefits for the Partnership's officers and directors, as well as for Teekay Corporation.

***The Materially Misleading and/or Incomplete Proxy Statement***

40.     On November 2, 2021, the Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Partnership unitholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*
*to the Proposed Transaction*

41.     Specifically, the Proxy Statement fails to disclose material information concerning
the process conducted by the Partnership and the events leading up to the Proposed Transaction.
In particular, the Proxy Statement fails to disclose:

a.  Adequate information as to the influence that Teekay Corporation had over the
    Teekay GP Board in the latter's determination to agree to a sale of the entire
    Partnership;

b.  Adequate information regarding why the Teekay GP Board engaged Morgan
    Stanley rather than some other financial advisor when Morgan Stanley had been
    engaged to Teekay Corporation throughout the Stake Sale process;

c.  Whether the confidentiality agreements entered into by the Partnership with
    Stonepeak differed from any other unnamed confidentiality agreement entered
    into between the Partnership and potentially interested third parties if any, and
    if so, in what way;

d.  All specific conditions under which any standstill provision contained in any
    entered confidentiality agreement entered into between the Partnership and
    potentially interested third parties throughout the sales process, including
    Stonepeak, would fall away;

e.  Communications regarding post-transaction employment during the
    negotiation of the underlying transaction must be disclosed to unitholders.
    Communications regarding post-transaction employment during the
    negotiation of the underlying transaction must be disclosed to unitholders. This
    information is necessary for unitholders to understand potential conflicts of
    interest of management and the Board, as that information provides

illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Partnership unitholders.

*Omissions and/or Material Misrepresentations Concerning Teekay LNG's Financial Projections*

42.     The Proxy Statement fails to provide material information concerning financial projections for Teekay LNG provided by Teekay LNG management and relied upon by Houlihan Lokey and Morgan Stanley in their analyses.   The Proxy Statement discloses management-prepared financial projections for the Partnership which are materially misleading.

43.     The Proxy Statement should have, but fails to provide, certain information in the projections that Teekay LNG management provided to the Board, Houlihan Lokey, and Morgan Stanley.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.   Investors can come up with their own estimates of discount rates or [] market multiples.   What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

44.     With regard to the Teekay LNG projections, the Proxy Statement fails to disclose material line items for the following metrics:

　　　　a.  Proportionate Economic Revenue, including all underlying necessary inputs and assumptions, including specifically: Net Adjusted Revenues attributable to the Partnership's proportionate ownership, which includes the Partnership's wholly-owned subsidiaries, as well as its proportionate ownership interest of the Net Adjusted Revenues for its non-wholly-owned subsidiaries and its equity-accounted joint ventures. The specific sub-multiples for Net Adjusted Revenues include: income from vessel operations before vessel operating expenses, time-charter hire expenses, depreciation and amortization, general and administrative expenses, write-down of vessels and goodwill, gain or loss on sale of vessels, and restructuring charges and includes the excess of cash

receipts over revenue recognized for accounting purposes on charters classified as direct finance type leases;

b. Proportionate Economic Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: Adjusted EBITDA attributable to the Partnership's proportionate ownership, including Adjusted EBITDA for the Partnership's wholly-owned subsidiaries, as well as its proportionate ownership interest of the Adjusted EBITDA from non-wholly-owned subsidiaries and its equity-accounted joint ventures. The specific sub-multiples for Adjusted EBITDA include: net income before interest, taxes, and depreciation and amortization and specific adjustments to exclude certain items whose timing or amount cannot be reasonably estimated in advance or that are not considered representative of core operating performance, including unrealized credit loss provisions or reversals, unrealized gains or losses on non-designated derivative instruments, write-downs of vessels, gains or losses on sales of vessels, foreign currency exchange gains or losses, adjustments for direct financing and sales type leases to a cash basis, and certain other income or expenses, and excludes realized gains or losses on interest rate swaps as management, in assessing the Partnership's performance, views these gains or losses as an element of interest expense and realized gains or losses on derivative instruments resulting from amendments or terminations of the underlying instruments;

c. Proportionate Economic Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: Economic Unlevered Free Cash Flow attributable to the Partnership's proportionate ownership including the Economic Unlevered Free Cash Flow for the Partnership and its wholly-owned subsidiaries, as well as its proportionate share of the Economic Unlevered Free Cash Flow from non-wholly-owned subsidiaries and its equity-

accounted joint ventures. The specific sub-multiples for Economic Unlevered Free Cash Flow include: Economic Adjusted EBITDA, plus proceeds from sales of vessels, less cash taxes, expenditures for vessels and equipment and drydock expenditures, and plus other changes in estimated net working capital; and

d.  Proportionate Economic Capital Expenditure, including all underlying necessary inputs and assumptions, including specifically: Capital Expenditure attributable to the Partnership's proportionate ownership, including Capital Expenditure for the Partnership's wholly-owned subsidiaries, as well as its proportionate ownership interest of the Capital Expenditure from non-wholly-owned subsidiaries and its equity-accounted joint ventures. The specific sub-multiples for Capital Expenditure include: capital expenditures for new buildings and drydock expenditures.

45.    The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46.    This information is necessary to provide Plaintiff in his capacity as a Partnership unitholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.    Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Partnership's true worth, the accuracy of Houlihan Lokey's or Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey*

48.     In the Proxy Statement, Houlihan Lokey describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.     With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose the following:

> a.   The specific metrics for each analyzed comparable company, as well as all requisites inputs and assumptions therein;
>
> b.   The specific inputs and assumptions used to determine the utilized selected multiple range of 7.75x to 8.50x 2021 Proportionate Economic Adjusted EBITDA; and
>
> c.   The specific inputs and assumptions used to determine the utilized selected multiple range of 8.50x to 9.25x 2022 Proportionate Economic Adjusted EBITDA; and
>
> d.   The specific inputs and assumptions used to determine the utilized selected multiple range of 8.75x to 9.50x 2023 Proportionate Economic Adjusted EBITDA.

50.     With respect to the *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the following:

> a.   The specific inputs and assumptions used to determine the utilized selected multiple range of 8.00x to 8.50x 2021 Proportionate Economic Adjusted EBITDA;

b. The specific inputs and assumptions used to determine the utilized selected multiple range of 8 8.50x to 9.00x 2022 Proportionate Economic Adjusted EBITDA;

c. The specific date on which each precedent transaction closed; and

d. The value of each precedent transaction analyzed.

51. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the following:

a. The projected unlevered, after-tax free cash flows utilized;

b. The projected dividends to be received by the Company from its joint ventures utilized;

c. The terminal values calculated;

d. The specific inputs and assumptions used to determine the utilized multiples range for the Company's 2025 Proportionate Economic Adjusted EBITDA and 2030 Proportionate Economic Adjusted EBITDA of 7.00x to 8.00x;

e. The specific inputs and assumptions used to determine the utilized range of perpetuity growth rates to the 2025 projected dividends to be received by the Company from its joint ventures and 2030 projected dividends to be received by the Company from its joint ventures of 1.00% to 2.50%; and

f. The specific inputs and assumptions used to determine the utilized discount rates ranging from, in the case of the unlevered after-tax free cash flows, 6.0% – 7.0%, and, in the case of the projected dividends to be received by the Company from its joint ventures, 10.0% - 11.0%.

52.     These disclosures are critical for Plaintiff in his capacity as a Partnership unitholder to be able to make an informed decision on whether to seek appraisal for his units rather than accepting the consideration proffered under the terms of the Proposed Transaction.

53.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes unitholder value and serves his interests.   Moreover, without the key financial information and related disclosures, Plaintiff in his capacity as a Partnership public unitholder cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests.   As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

54.     In the Proxy Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion.   However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.   Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

55.     With respect to the Publicly Traded Comparable Companies Analysis, the Proxy Statement fails to disclose the following:

     a.   The specific inputs and assumptions used to determine the utilized selected multiple ranges of:

       i.   AV/2021E Mgmt. Plan EBITDA of 7.5x – 8.5x;

       ii.   AV/2022E Mgmt. Plan EBITDA of 7.5x – 8.5x;

       iii.   AV/2021E Consensus EBITDA of 7.5x – 8.5x; and

       iv.   AV/2022E Consensus EBITDA of 7.5x – 8.5x.

56.     With respect to the *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the following:

      a.   The specific date on which each precedent transaction closed; and

      b.   The value of each precedent transaction analyzed.

57.     With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the following:

      a.   The projected unlevered, after-tax free cash flows utilized;

      b.   The terminal values calculated;

      c.   The specific inputs and assumptions used to determine the utilized terminal AV / NTM EBITDA exit multiples ranging from 7.5x to 8.5x;

      d.   The specific inputs and assumptions used to determine the utilized discount rates range of 7.7% to 8.3%; and

      e.   The Partnership's weighted average cost of capital.

58.     With respect to the *Target IRR-Based Ability-to-Pay Analysis*, the Proxy Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized target range of annualized internal rates of return for the financial buyer of 12.0% to 14.0%; and

      b.   The specific inputs and assumptions used to determine the utilized range of AV/LTM EBITDA exit multiples of 7.0x to 9.0x.

59.     With respect to the *Equity Research Analysts' Price Targets*, the Proxy Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized discount rate of 8.8%;

      b.   The specific equity research analyst price targets utilized; and

c.   The identity of the analysts and/or firms which generated the utilized price targets.

60.     These disclosures are critical for Plaintiff in his capacity as a Partnership unitholder to be able to make an informed decision on whether to seek appraisal for his units rather than accepting the consideration proffered under the terms of the Proposed Transaction.

61.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes unitholder value and serves his interests.   Moreover, without the key financial information and related disclosures, Plaintiff in his capacity as a Partnership public unitholder cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     Defendants have disseminated the Proxy Statement with the intention of soliciting unitholders, including Plaintiff, to vote in favor of the Proposed Transaction.

64.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

65.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

66.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

67.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

68.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

69.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his units in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the unitholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### <u>(Against all Individual Defendants)</u>

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     The Individual Defendants were privy to non-public information concerning the Partnership and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Partnership unitholder.

72.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Partnership in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

73.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Teekay LNG's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Partnership, and that the Proxy Statement was misleading.  As a

result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

74.     The Individual Defendants acted as controlling persons of Teekay LNG within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Partnership, the Individual Defendants had the power and authority to cause Teekay LNG to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Teekay LNG and all of its employees.  As alleged above, Teekay LNG is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 18, 2021

**BRODSKY SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*